## W. H. SECREST v.   WILLIAM J. JONES.

An act of sale before an Alcalde, which declares that in consideration of two
promissory notes of the purchaser, for so much, the vendor has sold unto the
vendee a certain tract of land, but that it being inconvenient to have the titles
to said land made at this time, the vendor binds himself, his person and pro-
perty, to the vendee, to make or cause to be made to him, his heirs or assigns,
a full and complete transfer or deed to said tract, within three months from
date, and in the meantime he invests the said vendee with full, ample and
peaceable possession of the land, that he may freely enjoy the same, &c., as
if it were his own, acquired by a just and legitimate title, &c. ; held not to
have the effect of a conveyance, to pass the title absolutely, but the effect of
a contract to convey in case the vendee shall not make default in the perfor-
mance of his part of the contract.

In case of the default of the vendee, in such case, the vendor may elect to
abandon the contract, and recover back or alienate the land, upon giving no-
tice to the vendee and his refusal to perform his part of the contract, although
by its terms the making of the title and payment of the purchase money be
not dependant covenants.

Where the vendee has taken a bond for title, or contract to convey, which does
not show that the purchase money has been paid, upon proof that he paid
the purchase money, his title becomes absolute, and he, or those claiming un-
der him, can recover the land from his vendor, or a subsequent vendee, in an
action of trespass to try title; and is not put to his action for specific per-
formance.

It would seem that a decree of partition before the constitutional Alcalde of the
Jurisdiction of Austin, preserved in the office of the Clerk of the County
Court of Austin county, where the land lies in another county, is not admis-
sible in evidence, until it be recorded in the county where the land lies.

See this case for proof for record, of a contract in writing for the sale of land,
held sufficient under the decision in Paschal v. Perez.

Appeal from Fayette.   Tried below before the Hon. James
H. Bell.

Action of trespass to try title, commenced in Colorado
county, April 12th, 1853, by William J. Jones, against Wash-
ington Secrest and Larkin Secrest.   The land sued for was

the upper half of share number two, allotted to John J. Tumlinson, one of the heirs of Elizabeth Tumlinson, deceased. in the division of the league and labor of land, granted to said Elizabeth by the Mexican Government, as her headright. The defendants pleaded not guilty.

The plaintiff gave in evidence :

The grant to Elizabeth Tumlinson, as the head of a family, in Austin's first colony, of a league and labor of land, dated August 16th, 1824.

A copy of a proceeding or decree of partition, among the heirs of said Elizabeth, before the constitutional Alcalde of the Jurisdiction of Austin, on the 19th of December, 1833 ; certified on the 13th of March, 1855, by the Clerk of the County Court of Austin county, to be a true transcript of the partition of the land belonging to the estate of Elizabeth Tumlinson, among the heirs and proper representatives of said estate ; it appeared from the decree, that John J. Tumlinson was represented by James Wright.

A contract of sale from James Wright to Daniel T. Fitchett as follows :

In the Jurisdiction of Austin, on the 24th day of April, 1834, before me, R. M. Williamson, only Alcalde of said Jurisdiction, and the witness named at the end, came and appeared the citizen James Wright, a resident of said Municipality, whom I know and to whose act I gave faith, who declared that Daniel T. Fitchett, also a resident of said Jurisdiction, having this day executed to him, said James Wright, his several promissory notes, bearing even tenor and date herewith, to-wit : one for fifty dollars, payable on the first day of May next, and one for one hundred and fifty dollars, payable on the first day of January next, the said James Wright has sold unto said Daniel T. Fitchett, a tract or parcel of land situated as follows, to-wit : Beginning at the lower corner of Dewees's labor, on the west side of the Colorado river and running

south 704 varas to a stake in the prairie ; thence north 62 °
East to the Colorado river ; thence up said river to the S. E.
corner of lot No. 1 in the partition of the league of land
granted by Government to Elizabeth Tumlinson ; thence along
the south line of said lot No. 1, to the place of beginning,
being a part of lot No. 2 which was allotted to John J. Tum-
linson in the act of partition among the heirs of said Eliza-
beth Tumlinson ; and it being inconvenient to have the titles
to said land made at this time, the said Wright binds and
obligates himself, his person and property, to the said Fitchelt,
to make, or cause to be made, to him, his heirs or assigns, a
full and complete transfer or deed to said tract of land before
described, within three months from this date ; and in the
meantime he invests said Fitchett with full, ample and peace-
able possession of said parcel of land, that he may freely use
and enjoy the same, build houses, cut timber and open fields
upon the same as if it were his own acquired by just and legi-
timate title ; and to the strict compliance with all the fore-
going, he submits himself with his property to the Alcalde, or
other proper Judge, of the Jurisdiction of Austin, that he
may compel him to comply by all the rigor of law and execu-
tive process ; and should he fail to make said title, he author-
izes the said Judge to issue execution against his property for
whatever damages said Fitchett may sustain by reason of his
failure, without the necessity or form of trial. And he re-
nounces all laws that might favor him, together with that
which prohibits his general renunciation ; and he signed the
same with me before Bernard Liddy and W. Barret Travis,
witnesses present and resident of said Jurisdiction, together
with those of my assistance with whom I authenticate in con
formity to law.

J. WRIGHT.

Instrumental witnesses :    R. M. WILLIAMSON.

    B. A. Liddy.

    W. Barret Travis.

There were on said instrument the following indorsements :
Filed 11th November, 1840, in the office of the Clerk of
the County Court of Colorado county, for record.

REZIN BYRN, Clerk C. C.

By J. W. McCLURY, Deputy.

Recorded in book B, pages 201, 2 and 3, September 14th,.
A. D. 1841, by      JOHN EATON, Dep'ty Clerk, C. C.

REPUBLIC OF TEXAS, ⎱    Before me, Clerk of .the Coun-
 *County of Colorado.* ⎰ ty Court, in and for said county,
personally came and appeared the citizen Basil G. Igomes, and
after being duly sworn, declared that W. Barret Travis is
dead, and that the above signature is said Travis' ; and further
states that he believes B. A. Liddy to be dead.

Given under my hand and have hereunto affixed the seal of
said county, this December 17th, A. D. 1841.

W. B. PERRY, Clerk C. C. C. C.

REPUBLIC OF TEXAS, ⎱    Before me, Clerk of the Coun-
 *County of Colorado.* ⎰ ty Court, in and for said county,
personally came and appeared the citizen W. B. Dewees, who,
after being duly sworn, declared that the above signatures are
those of James Wright and J. Barret Travis, and to the best.
of his knowledge and belief said Travis is dead.

Given under my hand and the county seal, this December
31st, A. D. 1841.      W. B. PERRY, Clerk C. C. C. C.

STATE OF TEXAS, ⎱    I, Samuel M. Williams, do sol-
 *County of Galveston.* ⎰ emnly swear that W. Barret Tra-
vis, whose name appears as a witness to the annexed instrument
of writing, departed this life several years ago, and subse-
quent to the date of the execution of said instrument, to-wit :
subsequent to the 24th April, 1834. I also further swear, that
the place of residence of B. A. Liddy, the other subscribing
witness to said instrument of writing is unknown to this af-
fiant. So help me God.

SAMUEL. M. WILLIAMS.

Sworn to and subscribed before me this 15th day of Sep-
tember, A. D. 1854.

In testimony whereof I hereunto set my name and impress of my official seal the day and year aforesaid.

A. F. JAMES, Not. Pub.

Galveston County.

THE STATE OF TEXAS,      }   I, Samuel M. Williams, of
    *County of Galveston.*  }   the county and State aforesaid, do solemnly swear that I was well acquainted with the signature of W. Barret Travis in his lifetime, having frequently seen him sign his name ; I further swear that the name of said W. Barret Travis to the annexed instrument of writing, as one of the subscribing witnesses thereto, is, to the best of my belief, the genuine signature and in the proper handwriting of said W. Barret Travis now deceased.   So help me God.

SAMUEL M. WILLIAMS.

Sworn to and subscribed before me this 15th day of September, 1854.

In testimony whereof I hereunto set my name and impress of my official seal this day and year aforesaid, at the city of Galveston.                    A. F. JAMES, Not. Pub.

Galveston County.

THE STATE OF TEXAS.      }   I, John L. Sleight, do sol-
    *County of Galveston.*  }   emnly swear that I was well acquainted with the signature of W. Barret Travis in his life time, having frequently seen him sign his name.   I further swear that the name of said W. Barret Travis to the annexed instrument of writing, as one of the subscribing witnesses thereto, is, to the best of my belief, the genuine signature and in the proper handwriting of said W. Barret Travis, now deceased, so help me God.            JOHN S. SLEIGHT.

Sworn to and subscribed before me this 15th day of September, A. D. 1854.

In testimony whereof I hereunto set my name and impress of my official seal, in the city of Galveston, the day and year aforesaid.                    A. F. JAMES, Not. Pub.

Galveston County.

STATE OF TEXAS, } I, John Henry Brown, of said *County of Galveston.* county and State, do solemnly swear that I know James Wright, whose signature appears to the annexed deed of said Wright to Daniel T. Fitchett, and that he is dead and that I am well acquainted with his signature ; and I do further swear that the signature of said Wright, to the above described instrument, is his own true and genuine handwriting.

JOHN HENRY BROWN.

Sworn to and subscribed before me, at the city of Galveston, this 27th day of February, 1855. Given
[L. S.] under my hand and official seal the date above.

E. P. HUNT, Notary Public.

THE STATE OF TEXAS, } I, William B. Dewees, of *County of Colorado.* said county and State, do solemnly swear that I know James Wright, whose signature appears to the annexed deed, and that I also know W. Barret Travis, witness, whose signature appears to same ; that both said Wright and Travis are dead, and that their signatures to said deed are in their own proper handwritings ; and that I am well acquainted with their signatures ; and I do further swear that the place of residence of B. A. Liddy is unknown.

W. B. DEWEES.

Subscribed and sworn to before me, to which I certify under
[L. S.] my hand and official seal, this April 3rd, A. D. 1855.

C. WINDRON, Clerk C. C. C. C.

THE STATE OF TEXAS, } Filed for record this April *County of Colorado.* 3rd, 1855, at 10 o'clock, A. M. Recorded in book H, pages 459, 460, 461 and 462, to which I certify under my hand and official seal, April 10th, 1855.

[L. S.] C. WINDRON, Clerk C. C. C. C.

A deed from Fitchett to plaintiff, dated September 23rd, 1841, and recorded September 5th, 1843.

Plaintiff then proved by a witness, that the reason why lot number two, in the partition, was allotted to James Wright, representative of John J. Tumlinson, as stated in said proceedings, was that he, Wright, had purchased the said John J. Tumlinson's share in the said E. Tumlinson league and labor ; that witness was present at the sale from John J. Tumlinson to James Wright, of said share ; that witness knew of no deed or writing evidencing that sale, or that any deed was made by John J. Tumlinson to James Wright ; that witness and said Wright were interested together in said purchase ; that Wright deeded to witnesss his half of said purchase, being the southern half of said lot number two ; that immediately after the partition was made, as aforesaid, Wright went into the possession of the land in controversy ; that Wright built a log dwelling house and out houses and horse lots on the land in controversy ; this he thinks was in the latter part of 1833 or Spring of 1834, that after the sale to Wright by John J. Tumlinson, the Tumlinson never set up any claim to the land, but recognized the sale to Wright ; that shortly after the possession of the land was taken by Wright as aforesaid, Danl. T. Fitchett purchased the land from James Wright, and soon after Wright left the land ; in 1834 Fitchett went into possession. Fitchett remained in possession of the land some four or five months, he thinks until the winter of 1834, living upon the land with his family. Fitchett made some improvements, dug a well, and fenced up the houses and lots, and completed the improvements commenced by Wright. Does not remember whether Wright had begun the digging of the well or not before he left the land, Wright might have commenced it, but he does not recollect positively. Fitchett claimed the land as his own while he was in the possession of it. Witness lived about a half a mile from the land, does not remember of any one going into possession of the land immediately after Fitchett left. Some time afterwards, a man by the name of McGuffin.

went into possession of the land after Fitchett went to Brazoria. McGuffin remained in possession one or two months. Does not know who put him in possession, or under whom he entered, or that he entered under any person. McGuffin had just come to that part of the country and thinks he probably just went into the Fitchett houses for shelter. While McGuffin was in possession, witness heard him say he would like to own the land and to buy it from Fitchett. That from the time Fitchett went into possession of the land up to the date of Jones's purchases from Fitchett in 1841, the said land was reputed to be Jones's land in the neighborhood; and from 1841 up to the time that W. H. Secrest took possession of the land, it was reputed to be Jones' land in the neighbood. The people thought it was Jones' land. It went by the name of the Jones land. He, witness, went with Jones, the plaintiff, and Toliver, a Surveyor, and they had the line run between the land in controversy and the witness' land. Cannot remember the exact time when this was done; thinks it was not long after the purchase of Jones from Fitchett. The line was run into the river. Jones exercised acts of ownership over the land from the time of his purchase in 1841, by cutting timber from it. He also spoke of cutting it up into town lots and moving on to it, and cleared off a place to build on. Jones got timber and fire-wood from the land at all times when he had occasion; cannot say, of his own knowledge, whether people got timber and fire-wood by his permission. These acts of ownership of the plaintiff over the land in controversy were notorious in the neighborhood of said land. Witness has resided in the neighborhood of said land from 1841 up to the present time, and from 1834 to 1841 he resided on the labor adjoining the said land.

There was a great deal of testimony, corroborating that of the above witness, as to the acts of ownership by the plaintiff, and common repute as to the ownership of the land; plaintiff claiming the land by limitation.

A son of Daniel T. Fitchett testified that in 1834 his father sold Wright a horse for $100, to be a payment of that amount on the land; and that in the latter part of the same year, witness' father let Wright have a remnant of goods and groceries which were also received as a payment on the land; does not recollect the price at which they were received; but witness stated that his father always afterwards claimed the land, and witness thought he had heard him so claim it and speak of it as his, Fitchett's, land, in Wright's presence, and never heard Wright dispute it, or set up any claim to the land afterwards; witness was ten years of age in the year 1834.

Defendants read in evidence a copy of an act of sale from James Wright to Joseph Thompson, dated August 18th, 1835, of the land in controversy, done at the town of San Felipe, before George Ewing, Judge of the First Instance of the jurisdiction of Austin; said copy being certified by the Clerk of the County Court of Austin county, to be a correct transcript from the files of his office.

A copy of an act of sale from Joseph Thompson to John W. Bunton and C. B. Shepherd, dated January 29th, 1838, done at the town of San Felipe, before Robert Kleberg, one of the Associate Justices of the county of Austin, acting as Notary Public, *ex-officio*, in the absence and for want of the Chief Justice of said county; certified by the Clerk of the County Court of Colorado, to be a correct transcript from the records of his office.

Deed of quit claim from C. B. Shepherd to Washington H. Secrest, one of the defendants, dated February 11th, 1853, for the grantor's interest in the undivided half of the land in controversy.

Defendants then called some witnesses, upon cross-examination of one of whom, it appeared that Secrest had notice of Jones' title when he purchased from Shepherd. Another witness for defendant testified, that after Fitchett's removal from

Columbus to Brazoria, he, Fitchett, and witness kept tavern as partners for several years; witness was intimate with Fitchett's affairs and frequently heard him speak of this land in controversy; that he pretended to claim the land by purchase from James Wright some time in 1834; witness thinks he had a bond for title; gave his note for the land; afterwards Wright became indebted to him on store account for witness did not know how much; less than one hundred dollars; which he demanded should be applied to the payment of said note; this was all witness ever knew Fitchett to pay; remembers hearing Fitchett say, some time in the year 1834, later than April, that he did not intend to pay for the land, as he did not believe his title to be valid; frequently heard him repeat the same thing, between the month of April, 1834, and September, 1841, but cannot repeat the conversations; did not think from what witness had heard Fitchett say frequently, that he considered his title worth anything; witness had no positive recollection of hearing Fitchett say anything about a cancellation of the bond; witness thought Fitchett set up a claim to the land towards the latter part of the period mentioned; he merely asserted that he had such a claim, but that it was doubtful; his pecuniary condition in the first part of the period was such that he was in easy circumstances, but in the latter part of the period he became embarrassed.

The Court gave the following instructions, among others:

The legal effect of the instrument executed by J. W. Wright to D. F. Fitchett on the 24th day of April, A. D. 1834, is that of an absolute deed or conveyance; that by said deed all the title of Wright to the land in controversy was conveyed to Fitchett, and the contract of sale so made between Wright and Fitchett, was such a contract as Wright had no ability in law to renounce or abandon, and it was such a contract as could be annulled only by a mutual act of cancellation between Wright and Fitchett.

The deed from Wright to Fitchett, dated 24th April, 1834,

vested Wright's title to the land in controversy, in Fitchett, without reference to the payment of the purchase money by Fitchett; because, as said above, the deed is absolute, and the transfer of the title was not made to depend on the payment of the purchase money, and the failure of Fitchett to pay the purchase money would not annul the contract of sale and re-invest Wright with the title to the land, unless there was an express agreement between Wright and Fitchett, that the contract of sale made 24th April, 1834, should be esteemed null, and that Wright should be reinvested with title to the land. If there was no cancellation of the contract of sale from Wright to Fitchett, then Wright's deed to Joseph Thompson conveyed no title, because Wright had no title at the time the deed was made.

Verdict and judgment for plaintiff. Motion for new trial overruled, &c.

There were a great many exceptions reserved by both parties, but it is only necessary to mention those noticed in this Court. Defendants excepted to the admission of the partition, in evidence, on the ground that it had not been recorded in the office of the Clerk of the County Court of Colorado county.

Defendants excepted to the admission of the copy of the contract of sale from Wright to Fitchett, for the following reasons:

1st. The same was never properly proved up to be filed for record at the first filing and recording, and the proof bears date after the file mark.

2nd. There was no seal of the Court to the certificate of filing and registration, and the same being signed by one claiming to be a Deputy Clerk, it is not sufficient. And the second proof for the second registration is insufficient. First. Because no affidavit made by disinterested party. Second. Witnesses should have purged themselves of interest.

3rd. Proof insufficient under the law.

Objections all overruled.

*G. W. Smith, R. Hughes* and *W. G. Webb,* for appellants.

*J. Robson, F. Tate* and *S. S. Munger,* for appellees.

WHEELER, J.   The doctrine held by this Court, in repeated decisions, has been that obligations to make title, of the character of that from Wright to Fitchett, of the 24th of April, 1834, are executory contracts of sale, which do not have the effect of a conveyance to pass the title absolutely. (3 Tex. R. 473–4.)  They evidence a contract of sale ; and they bind the obligor to make a conveyance, in case the obligee shall not make default in the performance of his part of the contract. But they do not pass the title absolutely.   In case of the default of the vendee, the vendor may elect to abandon the contract, and recover back or alienate the land, upon giving notice to the vendee and his refusal to perform his part of the contract, although by its terms the making of the title and payment of the purchase money be not dependent covenants. (Browning v. Estis, 11 Tex. R. 237, and cases cited.)   The Court therefore erred in the charge to the jury, that the effect of the instrument of the 24th of April, 1834, was that of an absolute deed or conveyance.   The evidence would have well warranted the jury in finding that the price had been paid, especially after so great a lapse of time, and that thereby the title became vested absolutely in the vendee, Fitchett.   But that was a question for the jury.   If it had been left to them to decide, under instructions to the effect that if the purchase money was paid, the title became absolute in the vendee, and he had the power to sell and convey the title to the plaintiff, there would have been no ground to disturb the verdict.

The objection that the Act of Partition, of the 19th of December, 1833, was not admissible in evidence, because not recorded, may be obviated by having it recorded in the proper county before another trial.

The instrument of the 24th of April, 1834, from Wright to Fitchett must be held to have been properly admitted to record under the decision of this Court in the case of Paschal v. Perez.    (7 Tex. R. 348.)

As the case must be remanded, it does not become necessary to decide upon the effect of the evidence touching the question of possession, or title by limitation; nor is it probable that it will become material upon another trial, as there can be but little doubt of the result upon the merits of the plaintiff's title.    The judgment is reversed and the cause remanded.

Reversed and remanded.