## BERING MFG. CO. v. W. T. CARTER & BRO. (No. 916.)*

(Court of Civil Appeals of Texas. Beaumont. July 21, 1924. Rehearing Denied Oct. 15, 1924.)

1. Logs and logging ☞3(7)—Trespass to try title ☞10—Purchaser who has paid full consideration held to take equitable title supporting action of trespass to try title.

Purchaser who has paid the full consideration for timber under contract providing for conveyance of the timber absolutely, or as interest in land itself, without limitation as to time of removal, has equitable title which will support action of trespass to try title.

2. Logs and logging ☞3(7)—Contract held to provide for conveyance of timber as interest in land and not merely right to remove timber.

A contract whereby each party agreed to convey timber to the other by deed warranting title held a contract to convey absolutely and without limitation or condition grantor's title and whole interest, under Rev. St. 1911, art. 1106, and not merely a contract requiring each to grant to the other the right to remove the timber.

3. Logs and logging ☞3(15)—Evidence held to sustain finding that plaintiff did not accept deeds conveying merely right to remove timber.

Evidence held to sustain finding that plaintiff, to which defendant had agreed to convey timber as interest in land, did not accept deeds granting merely right to remove timber within a certain time so as to be precluded from claiming the right to the timber as distinguished from merely the right to remove it.

4. Trespass to try title ☞4—Tender of deeds not necessary, where tender would have been refused.

A party to a contract providing for conveyance by each party to the other of timber was not bound to tender deed in order to base action of trespass to try title to timber, to conveyance of which he was entitled, where other party would have refused to accept deed, with understanding that he was bound to execute deed.

5. Limitation of actions ☞19(2)—Four-year statute of limitations held inapplicable.

Four-year statute of limitations (article 5692, Vernon's Ann. Civ. St. Supp. 1918) held not applicable to action in trespass to try title to timber which defendant had agreed to convey to plaintiff as an interest in land.

6. Witnesses ☞159(12)—Partnership's attorney's testimony not inadmissible as relating to transaction with deceased partner.

Testimony of attorney and legal adviser of partnership concerning nonacceptance of deeds from defendant held not inadmissible, under Rev. St. 1911, art. 3690, in action by surviving partners and representatives of deceased partner, as a transaction with the deceased.

Appeal from District Court, Polk County; J. L. Manry, Judge.

Suit by W. T. Carter & Bro. against the Bering Manufacturing Company. Judgment for plaintiff, and defendant appeals. Affirmed.

See, also, 255 S. W. 243.

Carothers & Brown, of Houston, for appellant.

Baker, Botts, Parker & Garwood, of Houston, and Feagin, German & Feagin, of Livingston, for appellee.

HIGHTOWER, C. J. This suit was filed by the appellees against appellant in the district court of Polk county on June 22, 1921. It takes the form of an action of trespass to try title to the pine timber on 23 different tracts of surveys of land in Polk county. The appellees are the surviving members of the copartnership known as W. T. Carter & Bro., the heirs of W. T. Carter, deceased, and the executors of his estate.

Appellant, Bering Manufacturing Company, answered by general denial, plea of not guilty, the statutes of limitation of 4 and 10 years, and a plea of laches and stale demand.

The case was tried with a jury, whose verdict consisted of their answer to one special issue, and judgment was rendered in favor of the appellees establishing their title to the timber involved, as prayed by them, and their right to enter upon the land and remove such timber, and from such judgment this appeal is prosecuted by the Bering Manufacturing Company, who attacks such judgment by a great number of assignments of error, many of which, however, present in different form the same legal question, and therefore they will not be discussed in their order, but appellant's main and controlling contentions only will be discussed in disposing of this appeal.

The copartnership of W. T. Carter & Bro. and the appellant, Bering Manufacturing Company, were each owners of sawmills in Polk county, Tex., and were engaged in the manufacture and sale of pine lumber. Each owned large quantities of pine timber growing on many different tracts of land. Some of the timber owned by Carter & Bro. was more accessible to the Bering mill than to the Carter mill, and some owned by Bering Manufacturing Company was more accessible to the Carter mill than to the Bering mill, and because of this fact Carter & Bro. and Bering Manufacturing Company, on the 17th of May, 1907, executed the following written contract for the exchange of pine timber between them:

"The State of Texas.

"This contract, made and entered into by and between W. T. Carter & Bro., a firm composed of W. T. Carter, Earnest Carter, and Jack Thomas of the first part, and the Bering Manufacturing Company, duly incorporated under the laws of this state, its principal office at the city of Houston, of the second part, witnesseth:

"(1) Each party to this contract grants to the other party a right of way over all land owned by said parties for tramroads and railroad purposes of the width of fifty (50) feet and to a greater width where it is necessary in building a tramroad or railroad, to use dirt or sand in construction. This right of way extends to and for the benefit of the Bering, Kiam & Southern Railroad, a majority of whose stock is owned by the party of the second part hereof.

"(2) The party of the second part is to convey to the party of the first part the pine timber owned by said party on the following tracts of land, to wit: J. A. Gilliland, J. Wrigley, C. Devore, the N. E. ¼ of the James Simmons, George Allen, Seth Batson, H. Schroder, John Warden, F. C. Bering, Houston & Texas Central Railway section 28; J. Butler, F. Prentiss, Thomas Waring, B. F. Waring, F. G. Waring, L. Castillian, G. Arrango. (The Schroder, Batson, F. G. Waring and the G. Arrango are situated partly in Tyler county. The other tracts are situated in Polk county.)

"(3) The party of the first part is to convey to the party of the second part the pine timber owned by said party on the following tracts of land, to wit: M. S. Womack league (west of Bear creek) M. S. Parker, Robert Oates, Joseph Gassiott, A. Lott, J. J. Cannon, W. I. Hanley, B. F. Ellis, M. Tanner, R. Wilborn, I. D. Thomas league, J. D. Blair, H. H. Cone league, I. H. Pate league, M. Swinney, said tracts situated in Polk county.

"(4) The party of the second part is not to buy timber south of a line drawn east and west from the north corner of the Escobeda league.

"(5) The party of the first part is not to buy timber west of Bear creek from the north corner of the Escobeda league up to a point where Bear creek strikes the northeast line of the Womack league, and from thence with the northeast line of the Womack league to the northeast corner of the Womack league; from thence north from the north corner of the Womack league to the R. W. Russell survey; thence westerly to southeast corner of John Dickenson league. The party of the first part is not to buy timber west and south of the boundaries here given, and the party of the second part is not to buy timber east and north of said line.

"(6) Either party can buy land and timber west of the H. E. & W. T. Ry.

"(7) The party of the first part in conveying by deed the pine timber embraced in this contract to the party of the second part is to warrant the title to the timber so conveyed; provided, however, that where the timber so owned is for a limited time, then the time limited is to be shown by the conveyance, and provided further, that whatever rights the party of the first part owns in and to the timber so conveyed is to be transferred to the party of the second part.

"(8) The party of the second part in conveying by deed the pine timber embraced in this contract to the party of the first part is to warrant the title to the timber so conveyed; provided, however, that where the timber so owned is for a limited time, then the time limited is to be shown by the conveyance, and provided further, that whatever rights the party of the second part owns in and to the timber so conveyed is to be transferred to the party of the first part.

"(9) The pine timber provided by this contract to be conveyed by the party of the second part to the party of the first part will be first scaled and measured as hereinafter provided, and the full amount computed and ascertained as provided in this contract. When this is done, the timber provided to be conveyed by the party of the first part to the party of the second part will also be scaled and measured as hereinafter provided and the full amount computed and ascertained as provided by this contract. Then when this is done, whatever amount of pine timber is found to belong to the party of the second part, an equal amount of pine timber belonging to the party of the first part will be conveyed to the party of the second part, this contract being an exchange of pine timber by and between the parties in equal proportions as herein stated, and it is not intended by this contract that the party of the first part shall convey to the party of the second part any more in feet than is conveyed by the party of the sec-

ond part to the party of the first part hereunder.

"(10) In measuring the pine timber belonging to the party of the first part to be conveyed to the party of the second part, the timber in exchange nearest to the mill of the party of the second part is to be conveyed by the party of the first part so that the timber conveyed by the party of the first part to the party of the second part in exchange will be nearest the mill of the party of the second part.

"(11) The deeds herein provided are to be legally executed and the timber transferred as herein provided so soon as the timber can be scaled and measured and the amounts ascertained upon which this exchange is made.

"(12) The party of the second part in consideration of the exchange of timber and the rights and privileges embraced and included by the terms of this contract is to pay the party of the first part twelve thousand and five hundred dollars.

"(13) The pine timber to be scaled and measured under and by the terms of this contract will be done by two men to be agreed upon by the first and second parties hereto. If either party at any time during the scaling and measuring of the pine timber herein provided becomes dissatisfied with either or both of the scalers, the scaling and measuring shall at once stop and the parties shall agree upon another scaler or scalers to take the place of the scaler or scalers so discharged by the terms of this contract, and this process shall continue during the entire time of scaling and measuring.

"(14) The pine timber to be scaled and measured under and by the terms of this contract is to be scaled, measured and computed by the scale of W. T. Carter & Bro., a copy of which is furnished by the party of the first part to the party of the second part, and with which the party of the second part is already advised.

"(15) The party of the second part is to convey by warranty deed to the party of the first part the William Sloan tract of land of 415⁵/₁₀ acres and 333 acres of the Sina Runnels league of land, bought from the Leon & H. Blum Land Company by F. C. Bering for the same amount of money that was paid for said land by the party of the second part or by F. C. Bering, together with interest thereon at six per cent. per annum from the date of purchase until the date of this contract. The Sloan tract was not purchased from Blum, but this applies to that tract and for the amount paid therefor by F. C. Bering the vendee.

"(16) It is agreed by and between the parties to this contract that in case either party shall buy timber in that locality set apart for the other party, then the purchaser shall pay to the other party as contractual damages the manufacturer's profit on whatever amount of timber that is so purchased by said party.

"(17) That part of this contract set forth in paragraphs 4, 5, and 6, limiting the territory in which the parties are to purchase land and timber, shall expire whenever either of the plants the said parties are now operating shall permanently cease to do business.

"(18) It is further understood that nothing in this contract is to interfere in any way with the pending exchange of timber between said party of the first part and the Livingston Lumber Company by which' the said party of the first part is to acquire that part of the H. C.

Cone survey now owned by said Livingston Lumber Company, and said Livingston Lumber Company is to acquire the P. Whittaker, B. Townsend, and a part of the L. H. Pate surveys now owned by said party of the first part.

"Witness our hands this the 17th ·day of May, A. D. 1907. W. T. Carter & Bro., by W. T. Carter. Bering Mfg. Co., per Conrad Bering, President. Bering Manufacturing Co., by F. C. Bering, Secretary. [Seal.]"

Immediately after the execution of the above contract scaling of the pine timber exchanged by Carter to Bering was commenced, and Bering commenced immediately to cut such timber, and continued such cutting of the Carter timber up to the latter part of December, 1913, at which time appellant had about fully completed the cutting of the Carter timber or as much thereof as appellant desired to cut, and the quantity of the Carter timber that had then been cut by appellant was largely in excess of the whole quantity of timber that was contracted by appellant to be exchanged to Carter & Bro.; and at that time much of the Bering timber exchanged to Carter & Bro. had not been cut, and neither of the parties to the contract had executed a deed to the other, as provided and contemplated by the contract, and for some time theretofore there had been some contention between them relative to the scaling of the timber exchanged and their rights under the contract.

On March 24, 1914, the Bering Manufacturing Company executed and mailed to W. T. Carter & Bro. two deeds conveying to Carter & Bro. the timber which appellant had contracted to exchange to Carter & Bro., and these deeds were received by Carter & Bro., and were never returned to appellant, and one of the contentions of appellant was and is that these deeds were accepted by W. T. Carter & Bro. as a compliance in full by appellant of its part of the contract, which contention is denied by the appellees, and the only issue of fact submitted for the jury's determination was whether or not these deeds were accepted by Carter & Bro. The jury found that these deeds were not accepted by Carter & Bro.

The main and controlling legal question in this case, as we see it, is the proper construction of the written contract between Bering Manufacturing Company and Carter & Bro., which we have copied above.

Appellant contends that the contract correctly construed entitled the parties to deeds allowing them only a reasonable time to remove the pine timber agreed to be exchanged, and not an unlimited time for that purpose, and that it was contemplated by them that their deeds, when executed under the contract, should so provide.

On the other hand, it is contended· by the appellees that it was the intention of the parties to the contract to convey each to the other the timber mentioned in fee-simple ti-

tle, and that it was the intention of the parties that the deeds to be executed by them under the contract should convey such timber in fee simple or as an interest in the land itself, and without any limitation whatever as to time for removing it, and that, appellant having cut and appropriated the Carter timber under the terms of the contract, and having failed and refused to execute to Carter & Bro. a deed to appellant's timber, as contemplated and provided by the contract, the equitable title to the Bering timber covered by the contract has passed to and vested in the appellees, and they were properly awarded judgment therefor. In other words, appellees present their view on this point by the following counterproposition:

"Where the consideration has been paid, as in the case at bar, a contract to convey operates to convey to the grantee an equitable title; and the contract to convey having provided for a deed conveying all the rights of the grantor to such timber, with covenants of general warranty without limitation as to time for removal of the timber, the appellees took title to the timber as an interest in the land with the right to remove at any time."

[1] If the written contract between the parties manifest their intention to convey each to the other the timber covered by the contract, absolutely, or as an interest in the land itself, without limitation as to time for removal, then it ought to be held that the equitable title to the Bering timber passed to and vested in appellees, as claimed by them, because it is undisputed, as we see this record, that Carter & Bro. have paid to appellant full consideration for such timber. It was held by the Supreme Court of this state at an early day that a purchaser of land under a contract or bond for title, who pays the consideration therefor, takes the equitable title to the land, which is superior to the legal title left in such vendor, and that such title in the vendee will support an action of trespass to try title. Secrest v. Jones, 21 Tex. 121; Secrest v. Jones, 30 Tex. 602; Stafford v. Stafford, 96 Tex. 112, 70 S. W. 76. We can see no difference in the attitude of a purchaser of land or interest in land under a bond for title and one under an ordinary contract of purchase, where the purchaser in both instances pays the consideration.

Now, was it contemplated by the parties to the contract that the timber conveyed by them each to the other was to be conveyed absolutely, without limitation or condition as to time for removal, as contended by the appellees, or does it appear from the contract that it was the intention of the parties to exchange their timber each to the other with the intention that it should be removed within a reasonable time, failing in which it would revert to the owner, as contended by appellant? The language employed by the parties to the contract must itself answer this question. In clause 2 of the contract they use this language:

"The party of the second part (Bering Manufacturing Company) is to *convey* to the party of the first part, (Carter & Bro.) *the pine timber owned by said party* in the following tracts of land, to wit: [Here follows the description of the tracts owned by Bering Manufacturing Company]."

In the third clause of the contract they use this language:

"The party of the first part is to *convey* to the party of the second part *the pine timber owned* by said party on the following tracts of land, to wit: [Here follows description of the tracts owned by Carter & Bro.]."

In the seventh clause they use this language:

"The party of the first part in *conveying by deed* the pine timber embraced in this contract to the party of the second part is to warrant the *title to the timber so conveyed;* provided, however, that where the timber so owned is for a limited time, then the time limited is shown by the conveyance, and provided further, that *whatever rights the party of the first part owns in and to the timber so conveyed is to be transferred to the party of the second part.*"

In clause 8 they use this language:

"The party of the second part in *conveying by deed* the pine timber embraced in this contract to the party of the first part is to *warrant the title to the timber so conveyed;* provided however, that where the timber so owned is for a limited time, then the time limited is to be shown by the conveyance, and provided further, that *whatever rights the party of the second part owns in and to the timber so conveyed is to be transferred to the party of the first part.*"

Italics in above quotations ours.

It is very clear, of course, from the contract that the parties contemplated and bound themselves to execute each to the other a deed conveying the timber bargained for. Article 1106, Revised Statutes of this state, provides as follows:

"Every estate in lands which shall hereafter be granted, conveyed or devised to one, although other words heretofore necessary at common law to transfer an estate in fee simple be not added, *shall be deemed a fee simple, if a less estate be not limited by express words* or do not appear to have been granted, conveyed or devised by construction or operation of law." (Italics ours.)

It will be observed that the parties to the contract bound themselves to exchange "deeds" to "convey" to each other; to "convey" by "general warranty deeds." Bouvier defines the word "conveyance" as follows:

"The transfer of the title of land from one person or class of persons to another. * * * It denotes an interest which carries from one

person to another *an interest in land*." (Italics ours.)

[2] We are unable to gather from the language employed by the parties to the contract any other intention than to convey to each other, absolutely and without limitation or condition, each party's title to and whole interest in the timber covered by the contract, and, they having so contracted, they must be held accordingly. We are unable to see anywhere in the contract any language employed by the parties which indicates an intention on their part to convey each to the other anything short of absolute title to the timber covered, and therefore, we hold that the contract was one to convey the timber by the parties to each other as an interest in the land upon which it was growing, and that, such being the legal effect of the contract, the parties thereto, had they executed deeds as contemplated by them, would not have been limited to any period of time for the removal of the timber, but each would have taken under such deeds a clear legal title to the timber as an interest in the land itself. Houston Oil Co. v. Hamilton, 109 Tex. 270, 206 S. W. 817; Chapman v. Dearman, 111 Tex. 132, 229 S. W. 1112; Lodwick Lumber Co. v. Taylor, 100 Tex. 270, 98 S. W. 238, 123 Am. St. Rep. 803. And it being undisputed, as we have stated, that Carter & Bro. paid the consideration in full as contracted for the timber by the parties for the timber awarded to it by the judgment in this case, the appellees must be held to be the owner of the equitable title to such timber, notwithstanding the deed to be made by appellant under the terms of the contract was never executed. It follows from these views that appellant's first contention, as we have stated it, must be overruled.

It is next contended by appellant that, the Bering Manufacturing Company having executed and delivered to Carter & Bro. on March 24, 1914, two deeds, by which it was provided that Carter & Bro. should have a limited time in which to remove the timber conveyed, and that these deeds having been accepted by Carter & Bro. as a compliance in full by appellant with its part of the contract, Carter & Bro. became bound by such provision in the deeds, and that Carter & Bro. having failed to remove the timber conveyed by the deeds within the time limited thereby, the appellees were not entitled to have judgment awarding them such right thereafter, as was done in this case. The two deeds which appellant executed on March 24, 1914, in favor of W. T. Carter & Bro., and which appellant claims were delivered to and accepted by Carter & Bro., provided that the timber thereby conveyed should be removed by Carter & Bro. within ten years from the date of the original contract, which, as we have shown, was on the 17th of May, 1907, leaving Carter & Bro. just a little more

265 S.W.—14

than three years from the date of these deeds in which to remove the timber. As we have shown, there was no such limitation of time in the original contract.

Again, the deeds which appellant claims were accepted by Carter & Bro. contained no grant of right of way for tramroads and railroads, as was provided by the original contract. The original contract, as will be seen, contained no provision for reversion of title to the timber on account of its not being removed within any stated time.

Again, the original contract provided that the deeds exchanged between the parties should have covenants of general warranty, but the two deeds which appellant. claims were accepted by Carter & Bro. contained no covenant of warranty. It was proved, upon the trial, by the testimony of Mr. C. L. Carter, that these deeds which appellant claims' were accepted by Carter & Bro. were, in fact, rejected by that firm, or their acceptance refused, because of the provisions which they contained that were different from the provisions of the original contract as we have just noted them. When the deeds were received by Carter & Bro., through the mail, that firm placed them in the hands of Mr. C. L. Carter, an attorney at law, who was at that time and had been for many years prior the legal adviser and attorney for Carter & Bro., and shortly after the deeds were placed in his hands Mr. Carter made an appointment with Mr. A. C. Bering, general manager of appellant, for the purpose of calling Mr. Bering's attention to the difference between the provisions of the original contract and those of the deeds with reference to the limited time in which to remove the timber, and also with reference to the failure to provide in the deeds, as it was provided in the original contract, that Carter & Bro. should be granted a right of way for tramroads and railroads, with a view to the removal of such timber, and also to the absence of the convenant of warranty from the deeds. In this conference Mr. Carter told Mr. Bering that the deeds were not acceptable to. Carter & Bro., and that they would not accept them because of the difference in the provisions thereof from those in the original contract, but Mr. Carter in this conference did not hand the deeds back to Mr. Bering, but kept them in his office for the purpose, as he explained while a witness on the stand, for referring to the data which they furnished in the way of description, etc., in drawing proper deeds as contemplated by the parties to the contract, in the event an agreement might be reached between the parties that such deeds be redrawn.

[3] Now able counsel for appellant strenuously contend in the brief that the retention of the deeds by C. L. Carter as the attorney for Carter & Bro., under the circumstances as we have detailed them, constituted an

acceptance of the deeds by Carter & Bro.. as a matter of law, and that the court should have so held in this case. This contention we cannot sustain, because we think that it was a question of fact as to whether the deeds were accepted as claimed by appellant, and the jury, upon an issue properly presenting the matter, determined the contention against appellant, and the testimony of Mr. C. L. Carter was sufficient to warrant such finding by the jury. We therefore overrule appellant's further contention that the jury's finding as one of fact touching the acceptance of the deeds was not sufficiently supported by testimony.

[4] Another· and further contention made by appellant is that it was shown without dispute that Carter & Bro. never performed its part of the original contract by executing and delivering to appellant a deed to the Carter timber. We think the record in this case shows without dispute that Carter & Bro. never at any time refused or declined to execute a deed to appellant, as contemplated by the contract, and Mr. C. L. Carter, the general manager of Carter & Bro., testified upon the stand that Carter & Bro. had never been unwilling and had never declined to execute a deed as called for by the contract, and that Carter & Bro. were still, at the time of the trial, willing to carry out its part of the contract by the execution of such deed, if appellant so desired. It is not claimed by counsel for appellant that Carter & Bro. had ever declined or refused to execute a deed to appellant, as contemplated by the contract, but the contention is merely that it was not proved that Carter & Bro. had in fact executed such deed. We think that the record in this case leaves no doubt that appellant would decline to accept such a deed from Carter & Bro., as contemplated by the contract, with the understanding that appellant was bound to execute to Carter & Bro. such a deed as it was bound under the contract to execute. We therefore overrule appellant's contention on this point.

. [5] If we are correct in our construction of the original contract as above shown, appellant's plea of limitation of four years could not avail it anything, because this is not a suit for the specific performance merely of a contract, as contended by appellant, but, on the contrary, is a suit in trespass to try title for timber as an interest in land, and therefore the four-year statute has no application, and that contention is overruled.

[6] Another contention by appellant is that the court committed error in permitting Mr. C. L. Carter to testify that the tendered deeds of March 24, 1914, were not acceptable to and were not accepted by Carter & Bro. as a compliance with the original contract; the contention being that such testimony was

inhibited by article 3690, R. S. 1911, and numerous decisions which are cited by counsel for appellant in that connection. About all that Mr. Carter testified to before the jury in this connection was that he was the attorney and legal adviser of Carter & Bro. at the time of the execution of these deeds, and had been for many years prior, and that, after these deeds were received through the mail by Carter & Bro., they came into his possession as the legal adviser and attorney for Carter & Bro., and that he, himself, in such a capacity and for Carter & Bro., notified and explained to Mr. A. C. Bering that the deeds would not be accepted as we have before shown. We do not believe that such testimony was inhibited by the statute invoked as showing a transaction with W. T. Carter, deceased, which in this case, because of the capacity of some of the appellees, would be prohibited.

What we have said disposes, in effect, of the main contentions advanced by appellant for reversal of this judgment, and, without discussing other lesser contentions, we overrule them all, and have ordered that the judgment be affirmed.